(C.D. 4830)

CERTIFIED BLOOD DONOR SERVICES, INC., PLAINTIFF
*v.* UNITED STATES, DEFENDANT

Court No. 69/29877

(Decided December 14, 1979)

*Sharretts, Paley, Carter & Blauvelt, P.C.* (*Peter Jay Baskin* on the briefs) for the plaintiff.
*Alice Daniel*, Assistant Attorney General; *Joseph I. Liebman*, Attorney in Charge, Field Office for Customs Litigation (*Madeline B. Cohen* on the brief), for the defendant.

### OPINION AND ORDER

WATSON, Judge: These are cross-motions for summary judgment in a dispute regarding the classification of imported serum used for the diagnosis of human blood disorders. The imported merchandise is the same in all material respects as the merchandise involved in *Certified Blood Donor Services, Inc.* v. *United States*, 62 CCPA 66, C.A.D. 1147, 511 F. 2d 572 (1975). It was classified under the ultimate residual provision of item 799.00[1] of the Tariff Schedules of the United States (TSUS).

In the previous action the principal question was the correctness of plaintiff's claim that item 437.76[2] of the TSUS, providing *inter alia* for "analogous biological products," described serums used for *diagnostic* purposes. The Court of Customs and Patent Appeals decided that it did. The issue was decided by reference to the "Tariff Classification Study Explanatory and Background Materials," November 15, 1960, schedule 4, part 3, page 86. The CCPA stated as follows:

> * * * That passage clearly demonstrates that the scope of item 437.76 was intended to "substantially correspond with the scope of the licensing requirements of the Public Health Service * * * applicable to the importation of certain biological products." [62 CCPA at 70.]

The CCPA went on to state as follows:

> These Public Health Service regulations broadly define the phrase "applicable to the prevention, treatment or cure of diseases

---

[1] Schedule 7, part 14—Nonenumerated products:
　　　Any article, not provided for elsewhere in these schedules:

| | | |
|---|---|---|
| 799.00 | Other | 9% ad val. |

[2] Schedule 4, part 3—Drugs and related products; subpart B:

| | | |
|---|---|---|
| 437.76 | Viruses, therapeutic serums, vaccines, toxins, antitoxins, and analogous biological products * * * | Free. |

or injuries of man" as "including also any other use for purposes of diagnosis if the diagnostic substance so used is prepared from or with the aid of a biologic product." * * * [*Id.* at 71.]

The term "biological product" was defined in 42 CFR 73.1 (1960) to include serums used for purposes of diagnosis. This led the CCPA to conclude that the proper classification of the imported merchandise was in item 437.76 of the TSUS as analogous biological products.

Plaintiff's motion for summary judgment is clearly meritorious and it remains only to comment on defendant's cross-motion and on its argument against the normal application of the rule of *stare decisis*.

In its opposition and cross-motion, the Government has concentrated its attention on proving that these importations did not have, and were not required to have, licenses under the Public Health Services Act. The Government argues that no *stare decisis* effect should be given to the CCPA decision because it erred as follows:

> There was no finding by the court that either the merchandise itself was licensed or that the manufacturer's establishment was licensed. Therefore, the court could not find that the merchandise or manufacturing establishment substantially corresponded with the scope of the licensing requirements of the Public Health Service as mandated by the legislative history.

It is the opinion of this court that *stare decisis* should be given full force and effect and the licensing considerations raised by the defendant are irrelevant to the classification of the merchandise. The classification of these importations is to be arrived at by the interpretation of the language of the TSUS and not by considerations of whether the importations do or do not require licenses pursuant to other legislation or regulations. The purpose of resorting to the Public Health Service regulation was as an aid in defining the statutory term "analogous biological products" and the clear meaning of the CCPA opinion is that it was arriving at a definition of the term "analogous biological product." That definition includes products used for diagnosis because the legislative history shows that the term was intended to be understood in conformity with the meaning of the term "biological products" in the licensing requirements of the Public Health Service. The TSUS language was not intended to be limited in its application to articles which require licenses.

Admittedly, the trial court and the CCPA did give some attention to a stipulation between the parties regarding the license status of the importations but the significance of that attention is not apparent. It suffices to say that the opinion of the CCPA does not indicate that the existence or nonexistence of a license for a particular importation enters into the determination of whether it is an "analogous biological product" within the meaning of item 437.76 of the TSUS.

In the opinion of this court once the TSUS term has been defined through whatever means and with whatever aids, the effect of the

interpretive aids such as the licensing provisions of the Public Health Service regulations does not extend to further modify the application of the statutory term under the TSUS.

For the above reasons it is

ORDERED, ADJUDGED, AND DECREED, that plaintiff's motion for summary judgment be, and the same hereby is, granted; and it is further

ORDERED, ADJUDGED AND DECREED, that the diagnostic serum covered by the above-captioned action is properly classifiable as an analogous biological product under item 437.76, TSUS, free of duty; and it is further

ORDERED, ADJUDGED AND DECREED, that the Regional Commissioner of Customs at the Port of New York shall reliquidate the entry accordingly; and it is further

ORDERED, ADJUDGED AND DECREED, that defendant's cross-motion for summary judgment be, and the same hereby is, denied.